1  Peter J. Anderson, Esq., Cal. Bar No. 88891
   E-Mail: pja@pjanderson.com
2  LAW OFFICES OF PETER J. ANDERSON
   A Professional Corporation
3  100 Wilshire Boulevard, Suite 2010
   Santa Monica, CA 90401
4  Tel: (310) 260-6030
   Fax: (310) 260-6040
5
   Attorney for Defendants
6  THE EXTREME MUSIC LIBRARY LIMITED
   and EXTREME MUSIC LIMITED
7

8              **UNITED STATES DISTRICT COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10                  **WESTERN DIVISION**

11  TWELVE SIXTY LLC, ARON              )  Case No. 2:16-cv-07261-RGK-RAOx
    MARDEROSIAN, and ROBERT            )
12  MARDEROSIAN,                        )
                                        )  DEFENDANTS' MEMORANDUM
13          Plaintiffs,                 )  OF POINTS AND AUTHORITIES
                                        )  IN SUPPORT OF MOTION TO
14     vs.                              )  DISMISS AND TO STRIKE
                                        )
15  EXTREME MUSIC LIBRARY              )
    LIMITED, EXTREME MUSIC            )
16  LIMITED, and DOE DEFENDANTS 1-    )  Date: January 17, 2017
    40, inclusive,                     )  Time: 9:00 a.m.
17                                      )
            Defendants.                 )  Courtroom of the Honorable
18                                      )      ary Klausner
                                        )  United States District Judge
19  _____ )

20

21

22

23

24

25

26

27

28

## **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES...............................................1

1.   INTRODUCTION.....................................................................................1

    (a)   Summary of Argument...................................................................1

    (b)   Summary of the Complaint's Allegations .................................1

        (1)   The Marderosians and their Company, Twelve Sixty LLC ..........2

        (2)   Viacom's Pre-2011 Dealings with Plaintiffs................................2

        (3)   Plaintiffs' Dissatisfaction and Viacom's Inducement of
             Plaintiffs' Entry into the 2011 Agreement ...................................2

        (4)   Plaintiffs' Allegations that Defendants, as Assignees of the
             Agreement, Have Breached the Agreement ..................................4

        (5)   The Claims that Plaintiffs Assert in their Complaint ..................4

2.   THE MOTION TO DISMISS IS PROPERLY GRANTED............................5

    (a)   The Standards Applicable to the Motion to Dismiss .................5

    (b)   The Second Claim for Breach of Implied Covenant....................5

        (1)   This Claim Is Duplicative of the Breach of Contract Claim ........5

        (2)   Punitive Damages Are Not Recoverable on this Claim ...............7

    (c)   The Third Claim for Fraud.................................................7

        (1)   California's Economic Loss Rule Bars the Fraud Claim .............7

        (2)   Plaintiffs Also Fail to Plead a Fraud Claim Against
             Defendants ..........................................................................8

            i.   The Heightened Standard Applicable to Fraud Claims ......8

            ii.   The Fraud Claim Fails as to Defendants .........................9

                a.   Plaintiffs Do Not Allege a Fraudulent
                   Representation by Defendants .................................9

                b.   Plaintiffs' Allegations Preclude Reliance on a
                   Misrepresentation by Defendants ..........................10

i

(d) The Fourth Claim for Breach of Fiduciary Duty Fails Because there Is No Fiduciary Relationship ........................................11

(e) The Fifth Claim for Promissory Estoppel ...............................12

    (1) Promissory Estoppel Is Not a Valid Claim Because Plaintiffs Allege an Agreement Supported by Consideration .....12

    (2) Punitive Damages Are Not Recoverable on this Claim ..............13

    (3) Neither Have Plaintiffs Pleaded a Promissory Fraud Claim .......14

(f) The Sixth Claim for Intentional Interference with Contract Fails Because Plaintiffs Fail to Allege Required Elements of the Claim .......14

(g) The Seventh Claim for Intentional Interference with Prospective Economic Advantage Also Fails for Lack of Requisite Elements ........15

(h) The Eighth Claim Under Bus. & Prof. Code § 17200 Also Fails ..........16

(i) The Ninth Claim for Common Law Unfair Competition Fails .............17

(j) The Tenth Claim for Unjust Enrichment Should Be Dismissed ............18

(k) The Eleventh Claim for an Accounting ..................................18

    (1) Plaintiffs Fail to Plead the Elements of the Claim .....................18

    (2) Plaintiffs Fail to Plead a Basis for their Alleged Right to Trace and Recover Defendants' Monies ....................................19

(l) The Second "Eleventh" Claim for Constructive Trust Also Fails .........20

(m) The Prayer's Request for Attorneys' Fees Is Contrary to Law .............20

3. CONCLUSION ........................................................................20

1

### <u>TABLE OF AUTHORITIES</u>

2

**Federal Cases**

3  *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)......................................... 5, 10, 14, 15

4  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).......................... 5, 15

5  *Bly-Mcgee v. California*, 236 F.3d 1014 (9th Cir. 2001) ...............................9

6  *Broadcast Music, Inc. v. Roger Miller Music, Inc.*, 396 F.3d 762 (2d Cir. 2005),

7   *cert. denied* 564 U.S. 871 (2005) ............................................................2

8  *Daewoo Motor Am., Inc. v. Gen. Motors Corp.*, 459 F.3d 1249 (11th Cir. 2006),

9   *cert. denied* 549 U.S. 1362 (2007) .......................................................18

10  *Desaigoudar v. Meyercord*, 223 F.3d 1020 (9th Cir. 2000).........................9

11  *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993 (9th Cir. 2010)................ 9, 10

12  *Fredianelli v. Jenkins*, 931 F. Supp. 2d 1001 (N.D. Cal. 2013)..................20

13  *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119

14   (9th Cir. 2014) ...................................................................... 7, 14, 16

15  *Gen. Sec. Servs. Corp. v. Cty. of Fresno*, 815 F. Supp. 2d 1123

16   (E.D. Cal. 2011) ...............................................................................7

17  *JMP Sec. LLP v. Altair Nanotechnologies Inc.*, 880 F. Supp. 2d 1029

18   (N.D. Cal. 2012)...............................................................................8

19  *Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009)............................ 8, 9, 16

20  *Keen v. Am. Home Mortg. Servicing, Inc.*, 664 F. Supp. 2d 1086

21   (E.D. Cal. 2009) ...............................................................................6

22  *Lennar Mare Island, LLC v. Steadfast Ins. Co.*, 139 F. Supp. 3d 1141

23   (E.D. Cal. 2015) .............................................................................14

24  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025

25   (9th Cir. 2008) ........................................................................... 5, 6, 17

26  *Meredith Corp. v. SESAC, LLC*, 2011 WL 856266 (S.D.N.Y. Mar. 9, 2011) ............4

27  *Reudy v. Clear Channel Outdoors, Inc.*, 693 F. Supp. 2d 1091 (N.D. Cal. 2010),

28  *aff'd sub nom. Reudy v. CBS Corp.*, 430 F. App'x 568 (9th Cir. 2011) ............. 15, 16

*Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035

  (9th Cir. 2010) ..................................................................................17

*Shum v. Intel Corp.*, 633 F.3d 1067 (Fed. Cir. 2010), *cert. denied*

  132 S. Ct. 367 (2011) ........................................................................18

*Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137 (9th Cir. 2008) .................17

*UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc.*, 117 F. Supp. 3d 1092

  (C.D. Cal. 2015) ............................................................................7, 8

*Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970 (9th Cir. 2010)..........................7

*Williams v. Cty. of Alameda*, 26 F. Supp. 3d 925 (N.D. Cal. 2014)...........................7

*World Surveillance Grp. Inc. v. La Jolla Cove Inv'rs, Inc.*, 66 F. Supp. 3d 1233

  (N.D. Cal. 2014) ..............................................................................11

**State Cases**

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.,* 7 Cal. 4th 503,

  28 Cal. Rptr.2d 475, 869 P.2d 454 (1994) .........................................15

*Bank of the W. v. Superior Court,* 2 Cal. 4th 1254, 10 Cal.Rptr.2d 538,

  833 P.2d 545 (1992) .........................................................................17

*Cal. Med. Ass'n v. Aetna U.S. Healthcare, Inc.,* 94 Cal. App. 4th 151,

  114 Cal. Rptr. 2d 109 (2001) ...........................................................18

*Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371,

  272 Cal. Rptr. 387 (1990) ..................................................................6

*Cates Constr., Inc. v. Talbot Partners*, 21 Cal. 4th 28, 980 P.2d 407 (1999) ..............7

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th 163,

  83 Cal. Rptr. 2d 548, 973 P.2d 527 (1999) ........................................20

*City of Hope Nat. Med. Ctr. v. Genentech, Inc.*, 43 Cal. 4th 375,

  181 P.3d 142 (2008) .................................................................... 11, 12

*Comm. On Children's Television, Inc. v. Gen. Foods Corp.*, 35 Cal. 3d 197,

  673 P.2d 660 (1983) .........................................................................11

*Della Penna v. Toyota Motor Sales, USA, Inc.,* 11 Cal. 4th 376,
45 Cal. Rptr. 2d 436, 902 P.2d 740 (1995) ............................................................16

*Engalla v. Permanente Med. Group, Inc.*, 15 Cal. 4th 951, 64 Cal. Rptr. 2d 843,
938 P.2d 903 (1997) ............................................................................................9

*Fleet v. Bank of Am. N.A.*, 229 Cal. App. 4th 1403, 178 Cal. Rptr. 3d 18
(2014) .................................................................................................... 18, 19

*Hambrick v. Healthcare Partners Med. Grp., Inc.*, 238 Cal. App. 4th 124,
189 Cal. Rptr. 3d 31 (2015) ............................................................................10

*Janis v. Cal. State Lottery Com.*, 68 Cal. App. 4th 824, 80 Cal. Rptr. 2d 549
(1998) .................................................................................................................19

*Jones v. Wachovia Bank*, 230 Cal. App. 4th 935, 179 Cal. Rptr. 3d 21 (2014)..........13

*Kajima/Ray Wilson v. Los Angeles Cty. Metro. Transp. Auth.*, 23 Cal. 4th 305,
96 Cal. Rptr. 2d 747, 1 P.3d 63 (2000) ............................................................13

*Michaelian v. State Comp. Ins. Fund,* 50 Cal. App. 4th 1093,
58 Cal. Rptr. 2d 133 (1996) ............................................................................20

*Nein v. HostPro, Inc.*, 174 Cal. App. 4th 833, 95 Cal. Rptr. 3d 34 (2009) ..................6

*Orcilla v. Big Sur, Inc.*, 244 Cal. App. 4th 982, 198 Cal. Rptr. 3d 715
(2016) .................................................................................................... 12, 13

*Pac. Gas & Elec. Co. v. Bear Stearns & Co.,* 50 Cal.3d 1118, 270 Cal. Rptr. 1,
791 P.2d 587 (1990) ............................................................................................14

*Peterson v. Cellco P'ship,* 164 Cal. App. 4th 1583, 80 Cal. Rptr. 3d 316
(2008) .................................................................................................................18

*Slivinsky v. Watkins-Johnson Co.*, 221 Cal. App. 3d 799, 270 Cal. Rptr. 585
(1990) .................................................................................................................6

*Sole Energy Co. v. Petrominerals Corp.*, 128 Cal. App. 4th 212,
26 Cal. Rptr. 3d 798 (2005) ............................................................................15

*Teselle v. McLoughlin*, 173 Cal. App. 4th 156, 92 Cal. Rptr. 3d 696 (2009) ............19

*Wolf v. Superior Court*, 106 Cal. App. 4th 25, 130 Cal. Rptr. 2d 860 (2003) ..........12

*Youngman v. Nevada Irrigation Dist.*, 70 Cal. 2d 240, 74 Cal. Rptr. 398,

  449 P.2d 462 (1969) ...................................................................12

**State Statutes**

Business and Professions Code Section 17200 ........................... 1, 4, 16, 20

**Rules**

Federal Rule of Civil Procedure 9 .............................................. 8, 10, 14, 16

Federal Rule of Civi Procedure 12 ............................................ 3, 5, 7, 8, 17

**Treatises**

B. Witkin, *Summary of California Law* (10th Ed. 2005) ...........................13

## MEMORANDUM OF POINTS AND AUTHORITIES

## 1.   INTRODUCTION

### (a)   Summary of Argument

Defendants The Extreme Music Library Limited and Extreme Music Limited respectfully submit this Memorandum in support of their Motion to Dismiss.

It is an understatement that plaintiffs have over-pleaded their Complaint. Defendants are British companies that license recorded music for use in movies, television shows, commercials and other productions.   Plaintiffs allege that defendants succeeded to the rights and obligations under a written contract for the exploitation of musical works created by plaintiffs, and that defendants have breached that contract by, for example, failing to register the musical works with Broadcast Music, Inc. ("BMI"), improperly registering them and failing to pay plaintiffs with respect to licenses defendants supposedly issued.   Plaintiffs' allegations of breach are disputed and do not even make sense – for example, failure to register with BMI would also deprive defendants of their share of BMI royalties.

However, not content with a breach of contract claim, plaintiffs allege that the breaches were "fraudulent" and malicious and plaintiffs purport to assert another eleven claims ranging from tortious breach of the implied covenant of good faith and fair dealing to fraud and violation of California Business and Professions Code Section 17200.   Plaintiffs assert claims that are plainly inapplicable under the law and plaintiffs fail to allege, let alone allege with the required particularity, fraud by defendants.   This Motion seeks dismissal of those additional eleven claims, leaving plaintiffs with their breach of contract claim.

### (b)   Summary of the Complaint's Allegations

Plaintiffs' Complaint alleges, and the Agreement that plaintiffs rely upon establishes, the following.[1]

---

[1]   For the purpose of this motion, only, well-pleaded allegations that do not conflict with the Agreement referenced in the Complaint are taken as true.

**(1)     The Marderosians and their Company, Twelve Sixty LLC**

Plaintiffs Aron and Robert Maderosians are brothers who write and produce music for use in movies and other productions.   Complaint at 5, ¶ 10.  They do business through plaintiff Twelve Sixty LLC ("Twelve Sixty").  *Id.* at 5, ¶ 11.

**(2)     Viacom's Pre-2011 Dealings with Plaintiffs**

Starting in 2008, Viacom, Inc. ("Viacom") and in particular its subsidiary, MTV Networks Co. ("MTVN"), used plaintiffs' "services and paid therefor," including under individual license agreements and then under a 2010 agreement. That 2010 agreement allowed Viacom and its subsidiaries to use plaintiffs' music "in exchange for a nominal up-front fee," with plaintiffs also to receive the "writer's share of royalties" from the use of the music.[2]  Complaint at 5-6, ¶¶ 12-13.

**(3)     Plaintiffs' Dissatisfaction and <u>Viacom's</u> Inducement of Plaintiffs' Entry into the 2011 Agreement**

Plaintiffs allege that under their 2010 agreement with Viacom, plaintiffs did not receive their writers' share of royalties because "neither Viacom or any of its subsidiaries or affiliates had registered the works with BMI as they had contracted to do."   Complaint at 6, ¶ 14.  Plaintiffs "repeatedly complained" to Viacom that the works were not registered with BMI, and although Viacom repeatedly assured plaintiffs that it would correct the problem, Viacom failed to do so.  *Id.* at 6:15-16.

"As a result, in 2011 the PLAINTIFFS met with representatives of Viacom who proposed a new agreement, representing to PLAINTIFFS that PLAINTIFFS would be 'partners' and the PLAINTIFFS' original music, plus their new

---

[2]     "[T]he standard practice is that a publisher retains fifty-percent of the revenue generated by a song's exploitation (known as the publisher's share) and pays the other fifty-percent to the writer of the song (known as the writer's share) . . . . Commonly, writers and publishers agree to be paid their respective shares of performing rights royalties directly by the performing rights organization," such as ASCAP, BMI or SESAC.  *Broadcast Music, Inc. v. Roger Miller Music, Inc.*, 396 F.3d 762, 765 (2d Cir. 2005), *cert. denied* 564 U.S. 871 (2005).

1   compositions, would become what was referred to as the 'Hype Music Library.'" *Id.*

2   at 6:16-19.   "The proposed agreement was represented to greatly increase the

3   revenue to PLAINTIFFS" because the music also would be offered to third parties

4   and plaintiffs would receive 50% of license fees, and the music would be registered

5   with BMI so plaintiffs would receive the writers' share of royalties. *Id.* at 6, ¶ 16.

6        Plaintiffs also "were told by Jose Cuello and Ernesto Elias [apparently

7   Viacom employees] that Viacom would work hand-in-hand with another music

8   industry executive, Russell Emanuel . . ., a principal of DEFENDANTS, who also

9   marketed their own music library, to generate additional revenue for PLAINTIFFS,"

10  in the form of the writers share of royalties and 50% of license fees. *Id.* at 7, ¶ 17.

11       Although plaintiffs sue for the alleged breach of the Agreement that Viacom

12  proposed in 2011 (*id.* at 7:8, & at 16-17, ¶¶ 47-52), plaintiffs do not attach a copy of

13  the Agreement to their Complaint.   The Agreement is between Twelve Sixty and a

14  Viacom company, New Creative Mix Inc. ("New Creative Mix"), is dated March 7,

15  2011, and is approved by the Marderosians.   Pounder Declaration at 2, ¶ 3, & Exh.

16  1.[3]   In the Agreement, plaintiffs confirmed that the recorded musical works they

17  provide are works for hire owned by New Creative Mix and plaintiffs also assigned

18  any rights plaintiffs have in the works to New Creative Mix. *Id.* at 5-6, ¶¶ 4.1-4.2.

19  The Agreement provides that Twelve Sixty would receive a one-time payment of

20  $20,000, 50% of certain license fees paid by third parties and the writers' share of

21  royalties, with New Creative Mix retaining the balance of license fees and the

22  publisher's share of royalties. *Id.* at 3, ¶ 1.4, at 9-10, ¶¶ 7.1-7.3, at 15, ¶ 6.  Plaintiffs

23  also agreed that New Creative Mix "shall be under no obligation to use the" works

24  plaintiffs deliver. *Id.* at 5, ¶ 2.1.   The Agreement provides for semi-annual

25  accountings and Twelve Sixty's right to audit, and that any claim must be filed

26  ――――――――――――

[3]   The Court may consider the Agreement on a Rule 12(b)(6) motion because

27  plaintiffs' Complaint identifies the Agreement, it "is central to the plaintiff[s']

    claim" and plaintiffs do not dispute its authenticity. *United States v. Corinthian*

28  *Colleges*, 655 F.3d 984, 999 (9th Cir. 2011).

within two years.  *Id.* at 11-13, ¶¶ 8.1-8.3.  The Agreement confirms that the parties are independent contractors and not partners (*id.* at 13, ¶ 10.1), and that plaintiffs obtained independent legal advice before entering into the Agreement (*id.* at 13, ¶ 9).

### (4)   Plaintiffs' Allegations that Defendants, as Assignees of the Agreement, Have Breached the Agreement

Plaintiffs allege that after they entered into the Agreement, Viacom assigned to defendants Viacom's rights and obligations under the Agreement.  Complaint at 2:23-25, 7, ¶ 18.  Plaintiffs allege that defendants have breached the Agreement (1) by not timely and properly registering the music with BMI, (2) by not providing or obtaining correct "cue sheets" – which are lists prepared by the producers of movies and other productions, identifying the music used in their productions and for which performance royalties are payable by BMI and other performing rights organizations when the production is broadcast[4] – thereby depriving plaintiffs of the writers' share of BMI royalties, (3) by not licensing the musical works for a profit and (4) by not paying 50% of license fees that plaintiffs contend were received by defendants.  *Id.* at 16-17, ¶¶ 49-50.  Plaintiffs also allege that these breaches were "fraudulent," "willful" and "malicious."  *See, e.g., id.* at 2:23-24, at 7, ¶ 20, at 12, ¶ 31.

### (5)   The Claims that Plaintiffs Assert in their Complaint

Based on these allegations, plaintiffs assert not only a claim for breach of the Agreement (Complaint at 16), but the following eleven additional claims: breach of implied covenant of good faith and fair dealing, fraud, breach of fiduciary duty, promissory estoppel, intentional interference with contract and with prospective economic advantage, violation of California Business and Professions Code Section 17200, common law unfair competition, unjust enrichment, an accounting and constructive trust (*id.* at 17-27).

---

[4]   *Meredith Corp. v. SESAC, LLC*, 2011 WL 856266, at \*4 (S.D.N.Y. Mar. 9, 2011) ("The music that is embedded in a particular program is determined by reference to lists prepared by program producers of music cues in a program" and "known as 'cue sheets'"); *see, above* at 2 n. 2.

**2.**     **THE MOTION TO DISMISS IS PROPERLY GRANTED**

    **(a)**     **The Standards Applicable to the Motion to Dismiss**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action . . . .'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Instead, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678, *quoting Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Under Rule 12(b)(6), the Court "may also consider unattached evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document." *Corinthian Colleges*, 655 F.3d at 999. Further, the Court "need not accept as true conclusory allegations that are contradicted by documents referred to in the complaint." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

    **(b)**     **The Second Claim for Breach of Implied Covenant**

        **(1)**     **This Claim Is Duplicative of the Breach of Contract Claim**

After their first claim for relief for breach of the Agreement, plaintiffs assert a claim for breach of the covenant of good faith and fair dealing implied in the Agreement. Plaintiff's breach of implied covenant claim is based on the same alleged breaches on which they base their first claim for breach of contract (*compare* Complaint at 16-17, ¶¶ 49-50, *with id.* at 17, ¶ 55), plus that defendants allegedly "offer[ed the musical works] to PLAINTIFFS' customers and potential customers so as to interfere with and injure PLAINTIFFS' business." *Id.* at 17:22-23. Plaintiffs' claim for breach of the implied covenant fails for at least two reasons.

1    First, "a breach of the implied covenant of good faith and fair dealing involves

2 something beyond breach of the contractual duty itself."  *Keen v. Am. Home Mortg.*

3 *Servicing, Inc.*, 664 F. Supp. 2d 1086, 1101 (E.D. Cal. 2009), *quoting Careau & Co.*

4 *v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1394, 272 Cal. Rptr. 387

5 (1990).  Accordingly, plaintiffs' implied covenant claim fails to the extent it is based

6 on the same alleged breaches as plaintiffs' first claim for breach of contract.

7    Second, plaintiffs' allegation that the implied covenant was breached by

8 defendants offering the musical works to plaintiffs' "customers and potential

9 customers" is directly contrary to the Agreement's express provisions that plaintiffs

10 do not own the musical works: rather, they are owned by New Creative Mix, which

11 has the exclusive rights to use them and, plaintiffs allege, assigned those rights to

12 defendants.  Agreement at 5-6, ¶¶ 4.1-4.2, & at 7, ¶ 4.9 (plaintiffs cannot use the

13 musical works); *Manzarek*, 519 F.3d at 1031 ("documents referred to in the

14 complaint" properly supersede complaint's conclusory allegations).

15    As a result, any attempt by plaintiffs to license the musical works to plaintiffs'

16 "customers and potential customers" would directly contradict the Agreement and,

17 indeed, would constitute copyright infringement.  That is a fatal defect to plaintiffs'

18 implied covenant claim because "[t]he implied covenant 'is designed to effectuate

19 the intentions and reasonable expectations of parties reflected by mutual promises

20 within the contract.'"  *Nein v. HostPro, Inc.*, 174 Cal. App. 4th 833, 852, 95 Cal.

21 Rptr. 3d 34 (2009), *quoting Slivinsky v. Watkins-Johnson Co.*, 221 Cal. App. 3d 799,

22 806, 270 Cal. Rptr. 585 (1990).  <u>"For this reason, it is well established that an</u>

23 <u>implied covenant cannot create an obligation inconsistent with an express term of</u>

24 <u>the agreement."</u>  *Nein*, 174 Cal. App. 4th at 852.  Given that the Agreement

25 expressly provides that plaintiffs do not own the musical works, plaintiffs cannot

26 invoke the implied covenant to claim a right to license the works to plaintiffs'

27 "customers and potential customers."

28    Accordingly, the breach of implied covenant claim also fails.

6

### (2)    Punitive Damages Are Not Recoverable on this Claim

Plaintiffs' implied covenant claim seeks the recovery of punitive damages. Complaint at 17, ¶ 57.  However, under California law "punitive damages are not recoverable for the breach of the implied covenant of good faith and fair dealing in cases that do not involve insurance policies." *Gen. Sec. Servs. Corp. v. Cty. of Fresno*, 815 F. Supp. 2d 1123, 1134–35 (E.D. Cal. 2011), *citing Cates Constr., Inc. v. Talbot Partners*, 21 Cal. 4th 28, 43, 980 P.2d 407 (1999).

Accordingly, if plaintiffs' second claim for breach of implied covenant is not dismissed in its entirety, its claim for punitive damages is properly dismissed. *Williams v. Cty. of Alameda*, 26 F. Supp. 3d 925, 948 (N.D. Cal. 2014) (improper request for punitive damages dismissed pursuant to Rule 12(b)(6)), *citing, inter alia*, *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974 (9th Cir. 2010).[5]

### (c)    The Third Claim for Fraud

Plaintiffs' third claim for fraud is nothing more than its contract claim recast as a tort.  The claim is barred by California's economic loss rule and plaintiffs also fail to allege, let alone with particularity, a fraud claim against defendants.

### (1)    California's Economic Loss Rule Bars the Fraud Claim

To "prevent[ ] the law of contract and the law of tort from dissolving into one another," California applies the economic loss rule.  *UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc.*, 117 F. Supp. 3d 1092, 1103 (C.D. Cal. 2015), *quoting Robinson Helicopter Co., Inc. v. Dana Corp.,* 34 Cal. 4th 979, 988, 22 Cal. Rptr. 3d 352, 102 P.3d 268 (2004).  "The economic loss rule [states] that no tort cause of action will lie where the breach of duty is nothing more than a violation of a promise which undermines the expectations of the parties to an agreement."  *UMG Recordings*, 117 F. Supp. 3d at 1103, *quoting JMP Sec. LLP v. Altair Nanotechnologies Inc.*, 880 F.

---

[5]    To err on the side of caution, defendants have also moved in the alternative to strike under Rule 12(f) plaintiffs' claims for punitive damages and other relief not available as a matter of law.  Notice of Motion at 1, 4; *see, below* at 13, 20.

Supp. 2d 1029, 1043 (N.D. Cal. 2012). "The rule generally bars tort claims based on contract breaches, 'thereby limiting contracting parties to contract damages.'" *UMG Recordings*, 117 F. Supp. 3d 1103, *quoting United Guar. Mortg. Indem. Co. v. Countrywide Financial Corp.,* 660 F.Supp.2d 1163, 1180 (C.D. Cal. 2009). The economic loss rule applies here and bars plaintiffs' fraud claim.

Plaintiffs plead that representations by Viacom and two of its representatives supposedly induced plaintiffs to enter into the Agreement. Complaint at 6-7, ¶¶ 15-17. Plaintiffs base their fraud claim against defendants on the allegations that, once defendants became bound by the Agreement, defendants breached the Agreement by failing to properly register the musical works with BMI, by not obtaining correct cue sheets with proper titles, by not requiring a license fee for the use of the musical works and by not providing correct accountings. Complaint at 18-19, ¶¶ 59-63. These allegations, albeit peppered with adjectives such as "fraudulent" and "falsely" (*id.*), are the same alleged breaches on which plaintiffs base their first claim for breach of the Agreement. *Id.* at 16-17, ¶¶ 49-50.

"Put simply, [plaintiffs have] taken the allegations underpinning a straightforward claim for breach of a commercial contract and recast them as [a] tort[ ]. The tort claim[ ] consist[s] of nothing more than [defendants'] alleged failure to make good on [their] contractual promises." *JMP Sec.*, 880 F. Supp. 2d at 1043 (judgment on the pleadings granted on fraud claim); *UMG Recordings*, 117 F. Supp. 3d at 1106 (fraud claim dismissed under Rule 12(b)(6). Accordingly, California's economic loss rule applies and plaintiffs'' fraud claim is properly dismissed.

### (2)   Plaintiffs Also Fail to Plead a Fraud Claim Against Defendants

#### i.   *The Heightened Standard Applicable to Fraud Claims*

While state law establishes the elements to be pleaded, Federal Rule of Civil Procedure 9(b) governs whether the pleading is sufficient. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). To comply with Rule 9(b), a plaintiff

must allege "the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010).  Conclusory allegations of fraud are insufficient.  *Bly-Mcgee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001).  Instead, Rule 9(b) "require[s the plaintiff] to plead her case with a high degree of meticulousness." *Desaigoudar v. Meyercord*, 223 F.3d 1020, 1022 (9th Cir. 2000).  This high standard serves important purposes, including deterring baseless fraud claims and their risk of reputational injuries. *Kearns*, 567 F.3d at 1124-25.

### ii.      The Fraud Claim Fails as to Defendants

"The elements of a cause of action for fraud in California are: '(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Kearns*, 567 F.3d at 1126 (emphasis omitted), *quoting Engalla v. Permanente Med. Group, Inc.*, 15 Cal. 4th 951, 974, 64 Cal. Rptr. 2d 843, 938 P.2d 903 (1997).  Plaintiffs fail to plead these elements.

### a.      Plaintiffs Do Not Allege a Fraudulent Representation by Defendants

Plaintiffs allege that <u>Viacom's</u> representations induced plaintiffs to enter into the Agreement, which was subsequently assigned to defendants.  Complaint at 6-7, ¶¶ 15-18.  Thus, plaintiffs' own allegations establish that <u>defendants</u> did not induce, fraudulently or otherwise, plaintiffs to enter into the Agreement.

Instead, plaintiffs allege that once the Agreement was assigned to defendants they "fraudulently" and "falsely" breached the Agreement by, for example, not registering the musical works with BMI, improperly registering them with incorrect names, offering them for free use and not issuing correct accountings.  *See, e.g.,* Complaint at 18-19, ¶¶ 59, 63.  Since defendants only receive payment if there are correct BMI registrations and licenses fees are charged and paid, plaintiffs

9

allegations are not plausible. *Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense"). Moreover, conclusory assertions that alleged breaches were "fraudulent" do not even satisfy Rule 8 – *Iqbal*, 556 U.S. at 678 (Rule 8 requires more than "unadorned, the-defendant-unlawfully-harmed-me accusation") – let alone satisfy the heightened standards of Rule 9(b), and are properly disregarded.

Further, nowhere in their 28-page Complaint do plaintiffs identify a single representative of defendants who supposedly made a representation to plaintiffs, let alone allege the "what, when, where, and how" of any representation by defendants and allege facts establishing a plausible claim that the person made the representations knowing they were false. *Ebeid*, 616 F.3d at 998.

Apparently because plaintiffs cannot point to such facts, they allege in passing that defendants "concealed" their alleged breaches. Complaint at 18:12, 17. But, non-disclosure can satisfy the requirement of a fraudulent misrepresentation only if there is a duty of disclosure. *Hambrick v. Healthcare Partners Med. Grp., Inc.*, 238 Cal. App. 4th 124, 162, 189 Cal. Rptr. 3d 31 (2015). Other than elsewhere incorrectly claiming a fiduciary relationship (*see, below* at 11-12), plaintiffs make no attempt to establish a duty of disclosure. Further, if disputing a claim of breach constituted concealment, every party to a contract would be subject to a fraud claim for simply denying that a breach of contract had occurred.

Plaintiffs fail to plead a fraudulent representation by defendants.

### b.   Plaintiffs' Allegations Preclude Reliance on a Misrepresentation by Defendants

Plaintiffs' own allegations preclude their reasonable reliance on any supposedly fraudulent representation by defendants.

First, plaintiffs allege they entered into the Agreement in reliance on representations by Viacom, not by defendants. Complaint at 6-7, ¶¶15-17.

Second, plaintiffs base their fraud claim on defendants' alleged breaches of the Agreement and assurances the breaches had not occurred or would be cured. *See, e.g., id.* at 18, ¶ 59. But, the Complaint does not allege that plaintiffs changed their position in reliance on anything defendants said or did. To the contrary, rather than rely on defendants, plaintiffs – who knew Viacom had allegedly breached the first agreement by failing to properly register works with BMI (*id.* at 6, ¶¶ 14-15) – instead pursued an "extensive investigation" of defendants' use of the musical works and then sued defendants. *Id.* at 11, ¶ 25.

Plaintiffs' fraud claim is barred by California's economic loss rule. In addition, plaintiffs fail to allege with any particularity any representation by defendants and plaintiffs' detrimental reliance on any such representation. Accordingly, plaintiffs' claim for fraud is properly dismissed.

**(d)** **The Fourth Claim for Breach of Fiduciary Duty Fails Because there Is No Fiduciary Relationship**

Plaintiffs' fourth claim for breach of fiduciary duty fails because there is no fiduciary relationship between plaintiffs and defendants.

"In a typical business contract or relationship, one party does not commit to act in the other party's best interest rather than in its own." *World Surveillance Grp. Inc. v. La Jolla Cove Inv'rs, Inc.*, 66 F. Supp. 3d 1233, 1235 (N.D. Cal. 2014). "A fiduciary relationship is a special circumstance in which the fiduciary 'assumes duties beyond those of mere fairness and honesty' and 'must undertake to act on behalf of the beneficiary, giving priority to the best interest of the beneficiary.'" *Id., quoting Comm. On Children's Television, Inc. v. Gen. Foods Corp.*, 35 Cal. 3d 197, 222, 673 P.2d 660 (1983). "[B]efore a person can be charged with a fiduciary obligation, he must either knowingly undertake to act on behalf and for the benefit of another, or must enter into a relationship which imposes that undertaking as a matter of law." *City of Hope Nat. Med. Ctr. v. Genentech, Inc.*, 43 Cal. 4th 375, 386, 181 P.3d 142 (2008), *quoting Comm. On Children's Television*, 35 Cal. 3d at

221.   "Traditional examples of fiduciary relationships in the commercial context include trustee/beneficiary, directors and majority shareholders of a corporation, business partners, joint adventurers, and agent/principal."   *Wolf v. Superior Court*, 106 Cal. App. 4th 25, 30, 130 Cal. Rptr. 2d 860 (2003).

Plaintiffs do not and cannot allege the basis for a fiduciary relationship with defendants.  Plaintiffs allege a commercial contract under which they are entitled to royalties, a portion of license fees and periodic accountings with respect to defendants' exploitation of the musical works.  *See, e.g.,* Complaint at 16, ¶ 49. Under established California law, however, that does not establish a fiduciary relationship.  *Wolf*, 106 Cal. App. 4th at 30-36; *see, also City of Hope*, 43 Cal. 4th at 391-92.  While that alone is sufficient to dispose of this claim, in the Agreement plaintiffs specifically agreed that the musical works belong to New Creative Mix, that there is no obligation to exploit them and that plaintiffs are independent contractors and not partners, joint venturers or principals in an agency relationship. Agreement at 4-6, ¶¶ 2.1, 4.1, & at 13, ¶ 10.1; *City of Hope*, 43 Cal. 4th at 386 ("There is no indication in the contract that Genentech entered into it with the view of acting primarily for the benefit of City of Hope").

Accordingly, the claim for breach of fiduciary duty also should be dismissed.

**(e)**      **The Fifth Claim for Promissory Estoppel**

**(1)**      **Promissory Estoppel Is Not a Valid Claim Because Plaintiffs Allege an Agreement Supported by Consideration**

While California law requires consideration to form a contract, California's "promissory estoppel doctrine makes 'a promise binding, under certain circumstances, <u>without consideration</u> . . . .'"  *Orcilla v. Big Sur, Inc.*, 244 Cal. App. 4th 982, 1007, 198 Cal. Rptr. 3d 715 (2016) (emphasis added), *quoting Youngman v. Nevada Irrigation Dist.*, 70 Cal. 2d 240, 249, 74 Cal. Rptr. 398, 449 P.2d 462 (1969).   "Put differently, promissory estoppel 'employs equitable principles to satisfy the requirement that consideration must be given in exchange for the promise

1   sought to be enforced.'"  *Orcilla*, 244 Cal. App. 4th at 1007, *quoting Kajima/Ray*
2   *Wilson v. Los Angeles Cty. Metro. Transp. Auth.*, 23 Cal. 4th 305, 310, 96 Cal. Rptr.
3   2d 747, 1 P.3d 63 (2000).

4         Here, however, plaintiffs allege a contract supported by consideration,
5   including their promise to deliver musical works and New Creative Mix's promise
6   as to royalties, license fees and accountings.  Since plaintiffs allege a contract
7   supported by consideration, promissory estoppel is inapplicable.

8         In addition, "'[t]he elements of a promissory estoppel claim are (1) a promise
9   clear and unambiguous in its terms; (2) reliance by the party to whom the promise is
10   made; (3)[the] reliance must be both reasonable and foreseeable; and (4) the party
11   asserting the estoppel must be injured by his reliance." *Orcilla*, 244 Cal. App. 4th at
12   1007, *quoting Jones v. Wachovia Bank*, 230 Cal. App. 4th 935, 945, 179 Cal. Rptr.
13   3d 21 (2014).  The only alleged promises are those in the Agreement, plus alleged
14   assurances – which plaintiffs did not rely upon to their detriment – that the claimed
15   breaches would be cured.  As a result, required elements of promissory estoppel are
16   absent and, at best, the claim is duplicative of the first claim for breach of contract.

17         Accordingly, the promissory estoppel claim also is properly dismissed.

18               **(2)    Punitive Damages Are Not Recoverable on this Claim**

19         Plaintiffs' promissory estoppel claim seeks the recovery of punitive damages.
20   Complaint at 22, ¶ 82.  However, promissory estoppel allows enforcement of a
21   promise that in contract would be unenforceable due to lack of consideration.
22   *Orcilla*, 244 Cal. App. 4th at 1007.  As a result, "[t]he usual remedy in promissory
23   estoppel cases is enforcement of the promise, and the damages are measured by the
24   extent of the obligation assumed and not performed.  1 B. Witkin, *Summary of*
25   *California Law* § 246 (10th Ed. 2005).

26         Accordingly, if plaintiffs' fifth claim for promissory estoppel is not dismissed
27   in its entirety, its claim for punitive damages is properly dismissed or stricken.  *See,*
28   *above* at 7 n. 5.

**(3)      Neither Have Plaintiffs Pleaded a Promissory Fraud Claim**

To the extent that plaintiffs intended their promissory estoppel claim to actually be a promissory fraud claim, the claim fails for at least the same reasons as their fraud claim: it is barred by California's economic loss rule and plaintiffs fail to allege with the particularity required by Rule 9 the elements of a fraud by defendants. *See, above* at 8-11.

**(f)      <u>The Sixth Claim for Intentional Interference with Contract Fails Because Plaintiffs Fail to Allege Required Elements of the Claim</u>**

Plaintiffs' sixth claim for intentional interference with contract fails because plaintiffs do not allege required elements of the claim.

"Under California law, the elements of the tort of intentional interference with contractual relations are: '(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014), *quoting Pac. Gas & Elec. Co. v. Bear Stearns & Co.,* 50 Cal.3d 1118, 1126, 270 Cal. Rptr. 1, 791 P.2d 587 (1990).  Plaintiffs provide only a conclusory and formulaic recitation of these elements, and that is not sufficient. *Iqbal*, 556 U.S. at 678.

Plaintiffs allege they "were parties to agreements with licensees and customers as described herein" (Complaint at 22, ¶ 84) and earlier refer to "customers" (*id.* at 17:55).  But, plaintiffs fail to identify any licensee or customer or any contract to which plaintiffs are a party, other than the Agreement they allege they have with defendants.   That is insufficient because, "[i]n an action for intentional interference with contractual relations, the plaintiff and defendant may not both be parties to the contract in question . . . .   Otherwise a plaintiff could improperly recast contract claims as tort claims." *Lennar Mare Island, LLC v. Steadfast Ins. Co.*, 139 F. Supp. 3d 1141, 1163 (E.D. Cal. 2015), *citing Applied*

1    *Equip. Corp. v. Litton Saudi Arabia Ltd.,* 7 Cal. 4th 503, 514, 28 Cal. Rptr.2d 475,

2    869 P.2d 454 (1994).  As a result, plaintiffs fail to plead the claim's first element.

3        Neither do plaintiffs allege facts plausibly establishing defendants' knowledge

4    of or interference with any of plaintiffs' contracts or any resulting actual breach or

5    disruption of the contracts.  Instead, plaintiffs merely allege on information and

6    belief the bare elements of the claim.  Complaint at 22, ¶¶ 85-86; *Iqbal*, 556 U.S. at

7    678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the

8    elements of a cause of action will not do . . . . '  Nor does a complaint suffice if it

9    tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"), *quoting*

10   *Twombly*, 550 U.S. at 555, 557.

11        Accordingly, this claim is properly dismissed.

12    **(g)**    **The Seventh Claim for Intentional Interference with Prospective**

13          **Economic Advantage Also Fails for Lack of Requisite Elements**

14        Plaintiffs also fail to plead the elements of their seventh claim for intentional

15    interference with prospective economic advantage.

16        "The elements of a cause of action for interference with prospective economic

17    advantage are: (1) an economic relationship between the plaintiff and a third party,

18    with the probability of future economic benefit to the plaintiff; (2) the defendant's

19    knowledge of the relationship; (3) the defendant's intentional and wrongful conduct

20    designed to interfere with or disrupt this relationship; (4) interference with or

21    disruption of this relationship; and (5) economic harm to the plaintiff proximately

22    caused by the defendant's wrongful conduct."  *Reudy v. Clear Channel Outdoors,*

23    *Inc.*, 693 F. Supp. 2d 1091, 1121–22 (N.D. Cal. 2010), *aff'd sub nom. Reudy v. CBS*

24    *Corp.*, 430 F. App'x 568 (9th Cir. 2011), *quoting Sole Energy Co. v. Petrominerals*

25    *Corp.*, 128 Cal. App. 4th 212, 241, 26 Cal. Rptr. 3d 798 (2005).  "In addition, a

26    claim for interference with prospective economic advantage requires proof that the

27    defendant 'not only interfered with the plaintiff's expectancy, but engaged in

28    conduct that was wrongful by some legal measure other than the fact of interference

1   itself." *Fresno Motors*, 771 F.3d at 1125, *citing Della Penna v. Toyota Motor Sales,*

2   *USA, Inc.,* 11 Cal. 4th 376, 393, 45 Cal. Rptr. 2d 436, 902 P.2d 740 (1995).

3       "The first element requires that the economic relationship be a *specific,*

4   *existing relationship* out of which the probability of economic benefit exists."

5   *Reudy*, 693 F. Supp. 2d at 1122 (emphasis in original).  Plaintiffs, however, merely

6   allege that as a result of unidentified representations defendants "induced" plaintiffs

7   to believe plaintiffs "could have and would have directly entered into additional

8   agreements and other commercial relationships with" unidentified third parties.

9   Complaint at 23, ¶ 90.  <u>Plaintiffs' belief in possible future contracts is not the</u>

10  <u>"specific, existing relationship" required to plead the first element of this claim.</u>

11      Since plaintiffs do not allege a specific and existing relationship, they also fail

12  to allege defendants knew of one.  Plaintiffs assert that defendants would have

13  known of possible future agreements because of "their fiduciary and confidential

14  relationship with" plaintiffs.  *Id.* at 23, ¶ 91.  But, that makes no sense and, in any

15  event, there is no fiduciary or confidential relationship.  *See, above* at 11-12.  In

16  addition, plaintiffs fail to identify any relationship that was disrupted and their

17  reference to disruption by "wrongful and anti-competitive conduct" is conclusory.

18  Further, plaintiffs fail to allege facts establishing a plausible claim that the phantom

19  interference was independently wrongful.  *Fresno Motors*, 771 F.3d at 1125.

20      Accordingly, this claim should be dismissed.

21      **(h)**    <u>**The Eighth Claim Under Bus. & Prof. Code § 17200 Also Fails**</u>

22      As their eighth claim, plaintiffs allege that defendants' breaches of the

23  Agreement by supposedly failing to properly register the musical works with BMI,

24  changing their names and giving them away for free, constitutes unlawful, unfair and

25  fraudulent conduct in violation of California Business and Professions Code Section

26  17200.  Complaint at 24, ¶ 97.  But, "Rule 9(b)'s particularity requirement applies

27  to" this claim (*Kearns*, 567 F.3d at 1125) and plaintiffs fall far short of that standard.

28  *See, above* at 8-11.  <u>Further, shorn of plaintiffs' hyperbole this claim relies on the</u>

1    <u>alleged breaches of contract, and "a common law violation such as breach of</u>

2    <u>contract is insufficient" to establish "unlawful" conduct within Section 17200.</u>

3    *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1044 (9th Cir. 2010).

4        Accordingly, plaintiffs' eighth claim also is properly dismissed.

5        **(i)    <u>The Ninth Claim for Common Law Unfair Competition Fails</u>**

6        Plaintiffs' ninth claim for common law unfair competition also is based on

7    plaintiffs' allegations that defendants have breached the Agreement by supposedly

8    failing to properly register the musical works with BMI, changing their names and

9    giving them away for free, with the additional allegation that defendants engaged in

10    "price cutting and below fair market sales . . . ."  Complaint at 24-25, ¶ 101.  Once

11    again, plaintiffs seek a tort recovery and punitive damages (*id.* at 25, ¶ 104) on a

12    contract claim.  And, once again, that attempt fails.

13        California's "common law tort of unfair competition is generally thought to be

14    synonymous with the act of 'passing off' one's goods as those of another."

15    *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1153 (9th Cir. 2008),

16    *quoting Bank of the W. v. Superior Court,* 2 Cal. 4th 1254, 1263, 10 Cal.Rptr.2d 538,

17    833 P.2d 545 (1992).  Plaintiffs, however, do not and cannot in good faith allege that

18    "Defendants have passed off their goods as those of another nor that they exploit

19    [plaintiffs'] trade names or trademarks . . . ."  *Sybersound*, 517 F.3d at 1153

20    (affirming Rule 12(b)(6) dismissal of common law unfair competition claim").  To

21    the contrary, plaintiffs allege that defendants received the right to exploit the musical

22    works and plaintiffs complain that defendants supposedly <u>do not</u> use the works'

23    names. *See, e.g.,* Complaint at 7:9 & 25:2.  Also, the Agreement confirms that New

24    Creative Mix, not plaintiffs, owns all rights to the musical works.  Agreement at 5-6,

25    ¶ 4.1; *Manzarek*, 519 F.3d at 1031 (document identified in complaint supersedes

26    plaintiff's contrary allegation).

27        Accordingly, plaintiffs' common law unfair competition claim also fails.

28    ///

**(j)      The Tenth Claim for Unjust Enrichment Should Be Dismissed**

Plaintiffs' tenth claim for unjust enrichment alleges that plaintiffs have not received the compensation they should have received from the exploitation of the musical works.  This claim also fails.

"Under California law, an unjust enrichment claim requires showing (1) receipt of a benefit (2) that is unjustly retained at the expense of another."  *Shum v. Intel Corp.*, 633 F.3d 1067, 1079 (Fed. Cir. 2010), *cert. denied* 132 S. Ct. 367 (2011), *citing Peterson v. Cellco P'ship,* 164 Cal. App. 4th 1583, 1593, 80 Cal. Rptr. 3d 316 (2008).  However, "[u]nder California law, a quasi-contract claim for unjust enrichment cannot lie when there is a written contract that covers the same subject matter."  *Daewoo Motor Am., Inc. v. Gen. Motors Corp.*, 459 F.3d 1249, 1260 (11th Cir. 2006), *cert. denied* 549 U.S. 1362 (2007), *citing Cal. Med. Ass'n v. Aetna U.S. Healthcare, Inc.,* 94 Cal. App. 4th 151, 171, 114 Cal. Rptr. 2d 109 (2001) ("When parties have an actual contract covering a subject, a court cannot—not even under the guise of equity jurisprudence—substitute the court's own concepts of fairness regarding that subject in place of the parties' own contract").

Here, plaintiffs allege a written Agreement as to the compensation they are to receive from the exploitation of the musical works.  Indeed, plaintiffs' first claim is for breach of that contract.  Accordingly, the unjust enrichment claim also fails.

**(k)      The Eleventh Claim for an Accounting**

**(1)      Plaintiffs Fail to Plead the Elements of the Claim**

Plaintiffs label two claims as their eleventh claim and the first one is for an accounting.  Complaint at 26-27.  "A cause of action for accounting requires a showing of a relationship between the plaintiff and the defendant, such as a fiduciary relationship, that requires an accounting or a showing that the accounts are so complicated they cannot be determined through an ordinary action at law."  *Fleet v. Bank of Am. N.A.*, 229 Cal. App. 4th 1403, 1413, 178 Cal. Rptr. 3d 18 (2014).  "An action for accounting is not available where the plaintiff alleges the right to recover a

1    sum certain or a sum that can be made certain by calculation." *Id.*, *quoting Teselle v.*

2    *McLoughlin*, 173 Cal. App. 4th 156, 179, 92 Cal. Rptr. 3d 696 (2009).

3         Plaintiffs first allege that they are entitled to an accounting because defendants

4    "have a fiduciary duty to account to" them with respect to the exploitation of the

5    musical works.  Complaint at 26, ¶ 113.  Defendants, however, are not fiduciaries to

6    plaintiffs.  *See, above* at 11-12.  Plaintiffs next allege that defendants have failed to

7    provide the information defendants are required to provide under the Agreement.

8    Complaint at 26, ¶¶ 114-15.  But, under their first claim for breach of contract

9    plaintiffs can obtain any information they are entitled to under the Agreement.  Since

10   the Agreements provides the means for calculating the amount, if any, owed

11   plaintiffs, the accounting claim fails.  *Fleet*, 229 Cal. App. 4th at 1413 ("accounting

12   is not available [if amount owed] can be made certain by calculation").  Plaintiffs

13   also broadly refer to monies from "the unlawful conduct described in the Complaint"

14   (*id.* at 27, ¶ 116), but (1) to the extent they mean the alleged contract breaches, the

15   amount can be made certain by calculation under the Agreement, and (2) to the

16   extent they mean the tort and other claims they assert, since those claims fail the

17   accounting claim fails too.  *Janis v. Cal. State Lottery Com.*, 68 Cal. App. 4th 824,

18   833–34, 80 Cal. Rptr. 2d 549 (1998) ("A right to an accounting is derivative; it must

19   be based on other claims" and fails when those claims fail).

20        Accordingly, the accounting claim fails.

21        **(2)    Plaintiffs Fail to Plead a Basis for their Alleged Right to**

22        **Trace and Recover Defendants' Monies**

23        Plaintiffs' accounting claim also alleges a right to "trace and recover all

24   property acquired by" defendants from the monies they received.  Complaint at 27,

25   ¶¶ 117-18.  But, plaintiffs have not pleaded and cannot in good faith plead a

26   fraudulent transfer or other claim providing that relief, let alone plead it with

27   particularity.  Accordingly, if the accounting claim is not dismissed in its entirety

28   then its claim for tracing should be dismissed or stricken.  *See, above* at 7 & 7 n. 5.

1

### (l)   The Second "Eleventh" Claim for Constructive Trust Also Fails

Plaintiffs' second "eleventh" claim is for a constructive trust on monies that they allege, on information and belief, defendants have "misappropriated and stolen from" plaintiffs by their supposed "fraudulent and inequitable conduct . . . ." Complaint at 27, ¶ 120.  "A cause of action for constructive trust is not based on the establishment of a trust, but consists of fraud, breach of fiduciary duty or [an]other act which entitles the plaintiff to some relief."  *Fredianelli v. Jenkins*, 931 F. Supp. 2d 1001, 1024 (N.D. Cal. 2013), *quoting Michaelian v. State Comp. Ins. Fund,* 50 Cal. App. 4th 1093, 1114, 58 Cal. Rptr. 2d 133 (1996).  There is no fiduciary relationship here and plaintiffs have not pleaded, let alone pleaded with the required particularity, fraud by defendants.  Accordingly, this claim also fails.

### (m)   The Prayer's Request for Attorneys' Fees Is Contrary to Law

The prayer in plaintiffs' Complaint requests attorneys' fees.  Complaint at 27, ¶ 5).  But, the Agreement does not include an attorneys' fees clause and attorneys' fees are not recoverable on plaintiffs' common law claims or their Section 17200 claim.  *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th 163, 179, 83 Cal. Rptr. 2d 548, 973 P.2d 527 (1999).  Accordingly, the request for attorneys' fees is properly dismissed or stricken.  *See, above* at 7 & 7 n. 5.

### 3.   CONCLUSION

Defendants respectfully submit that at most plaintiffs have pleaded a breach of contract claim, and their attempt to recast that contract claim as a tort and other claims should be rejected and the Motion granted.

Dated: November 30, 2016

_____/s/ Peter J. Anderson_____
Peter J. Anderson, Esq.
LAW OFFICES OF PETER J. ANDERSON
A Professional Corporation
Attorney for Defendants
THE EXTREME MUSIC LIBRARY LIMITED
and EXTREME MUSIC LIMITED